William MERKLIN, Appellant,

v.

UNITED STATES of America.

No. 85–5079.

United States Court of Appeals,
Third Circuit.

Argued March 18, 1986.

Decided April 15, 1986.

As Amended May 14, 1986.

Allan Kanner (argued), Allan Kanner & Associates, Philadelphia, Pa., Raymond P. Vivino, Vivino & Rocco, Wayne, N.J., for appellant.

Robert C. Longstreth (argued), M. Faith Burton, Washington, D.C., Richard K. Willard, Acting Asst. Atty. Gen., W. Hunt Dumont, U.S. Atty., Jeffrey Axelrad, Director, Torts Branch, for appellee.

Before HUNTER, MANSMANN, Circuit Judges, POLLAK,* District Judge

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Appellant William Merklin filed this action under the Federal Torts Claims Act ("FTCA" or "Act"), 28 U.S.C. §§ 1346(b), 2671–2680 (1982), seeking compensation for the injuries he allegedly sustained as a result of his work with radioactive materials in a plant retained and regulated by the Atomic Energy Commission ("AEC"). Because we hold that the district court prematurely granted judgment in favor of the United States on one of Merklin's claims, we reverse and remand.

### I.

Between 1953–59 and 1962–71, Merklin was employed by Rare Earths, Inc. and its successor, W.R. Grace & Co., as a foreman in a radioactive ore processing plant in Wayne, New Jersey.[1] In 1954, the AEC issued Grace a license authorizing the company to possess and process "source materials," i.e., radioactive industrial ores and chemicals. The AEC then entered into a contract with Grace under which the AEC would deliver radioactive monazite ore to Grace. Grace would extract thorium hydrozide from the ore for delivery to the AEC, which would use the metal to manufacture atomic weapons. Under the terms of the contract, the AEC retained title to the ore and to the refined products.

In 1981, Merklin was diagnosed as having cancer of the larynx, throat, and lymph nodes of the neck. Merklin underwent surgery involving the removal of the larynx, partial removal of the throat, and left radical neck dissection. Believing that his exposure to the source materials had caused his cancer, Merklin submitted an administrative claim to the Nuclear Regulatory Commission as required by FTCA § 2675(a). The Commission denied his claim on June 27, 1983, finding that Merk-

lin had failed to present evidence that his cancer had been proximately caused by the AEC's negligence.

In December 1983, Merklin filed suit in the District Court for the District of New Jersey alleging liability under the FTCA on three grounds. Merklin maintained that the AEC had breached its duty to inspect properly the Grace facility. He also suggested that the AEC, as the employer of Grace, owed a duty to Grace's employees to ensure that the processing plant was not an unreasonably dangerous work environment. Finally, Merklin contended that the AEC, as the owner of a dangerous chattel (the monazite ore and its derivatives), owed a duty to warn those who would come in contact with the chattel of the risks associated with it. After extensive briefing on these issues, the district court granted the United States' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### II.

5. The FTCA authorizes suits against the United States for compensatory damages for:

> personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Therefore, to succeed in this suit, Merklin must show that the United States would be liable as a private person under a tort theory recognized by New Jersey courts. His action must be in negligence, however, because the Act does not waive the United States' sovereign immunity for vicarious or strict liability suits. See Laird v. Nelms, 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972). The Act also proscribes suits arising from the perform-

---

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. W.R. Grace & Co. acquired Rare Earths, Inc., in the mid-1950s. For the purposes of this opinion, we will refer to the two firms as "Grace."

ance of discretionary governmental functions. FTCA § 2680(a) states that the Act does not apply to:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance of a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused.

*See generally United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (*"Varig Airlines"*); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Pennbank v. United States,* 779 F.2d 175 (3d Cir. 1985).

We note that because we are reviewing an order granting judgment under 12(b)(6), we are constrained to accept appellant's factual allegations as true. Our scope of review of the district court's judgment is plenary. *See Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978).

### III.

■ Merklin maintains that New Jersey's "good samaritan" rule imposed a duty on AEC inspectors to warn Grace employees of health hazards they may have discovered during the course of inspections conducted pursuant to the Atomic Energy Act, 42 U.S.C. §§ 2011–2284 (1982). Under New Jersey's formulation of the good samaritan theory of liability, one who undertakes to render a service to another is liable if he does so negligently. *See Bauer v. 141–149 Cedar Lane Holding Co.,* 24 N.J. 139, 145, 130 A.2d 833, 837 (1957); *see also Restatement (Second) of Torts,* §§ 323, 324. The district court determined that this theory was barred by the discretionary function exception. We agree.

In *Varig Airlines,* the Supreme Court identified two guidelines for determining whether governmental action is discretionary for the purposes of the FTCA. First, we must ascertain whether "the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability." *Varig Airlines,* 104 S.Ct. at 2765. On this point, we must be mindful that Congress designed the exception to preclude the application of the Act to agency decisions involving policy judgments. *Id.* at 2764. Second, the Court observed that the discretionary function exception plainly applies to "the discretionary acts of the Government acting in its role as a regulator of the conduct of individuals." *Id.* at 2765. *See generally General Public Utilities Corp. v. United States,* 745 F.2d 239, 242–46 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985).

Merklin has not referred us to any authority suggesting that the AEC's decisions about the method and manner of plant inspections are not committed to its discretion. Indeed, our own review of the Atomic Energy Act indicates that Congress granted the AEC a wide scope of discretion in the administration of the Atomic Energy Act's provisions. *See* 42 U.S.C. § 2035(c) (creating an Inspection Division "to gather information" to determine whether contractors are complying with the Atomic Energy Act). Moreover, we agree with the district court that the discretionary function exception clearly precludes Merklin's good samaritan theory because the theory attempts to hold the AEC liable in its capacity as a regulator. "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Varig Airlines,* 104 S.Ct. at 2768. *See Begay v. United States,* 768 F.2d 1059, 1064 (9th Cir.1985) (government inspection of uranium mines covered by the discretionary function exception).

Merklin urges us to follow *McMichael v. United States,* 751 F.2d 303 (8th Cir.1985), where the Eighth Circuit held that the dis-

cretionary function exception did not prohibit a claim based on the allegedly negligent inspection of a munitions plant by Defense Department officials. We do not believe that *McMichael* applies here. The *McMichael* court found that government regulations and provisions of the contract between the manufacturer and the government obligated several full-time inspectors to perform a large number of precise and highly technical inspections involving no policy judgment. *Cf. Griffin v. United States*, 500 F.2d 1059 (3d Cir.1974) (discretionary function exception inapplicable to the approval of a batch of vaccine where such approval was based on scientific, not policy, judgment). We believe that *McMichael* must be read narrowly to apply only to those situations where no policy judgment is implicated. We find the instant case differs distinctly from *McMichael* in that the AEC's discretion in conducting plant inspections appears unbounded. Accordingly, we hold that the discretionary function exception bars Merklin's good samaritan claim.[2]

### IV.

■ Merklin also argues that the United States may be found liable as the employer of Grace for Grace's negligence in permitting the processing plant to become contaminated with radioactive material. The general rule is that the employer of an independent contractor is not liable for the

torts of the contractor. *See Majestic Realty Associates v. Toti Contracting Co.*, 30 N.J. 425, 430, 153 A.2d 321, 324 (1959). This rule is subject to three limitations. Under *Majestic*, the employer may be liable for his contractor's negligence: (i) where the employer retains substantial control over the contractor's work; (ii) where the employer engages the contractor to perform "inherently dangerous" work; and (iii) where the employer has negligently selected an incompetent contractor. *Id.* at 430–35, 153 A.2d at 324–26; *see generally* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Torts*, 509–16 (5th ed.1984). Appellant relied on the first two exceptions below but raises only the second one on appeal.[3] We note that the government may be liable only if the tort involves a breach of a "direct" duty imposed on the employer, rather than an "indirect" duty based on vicarious liability doctrines. *See Gibson v. United States*, 567 F.2d 1237, 1244 (3d Cir.1977), *cert. denied*, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978).

The district court dismissed Merklin's claim under the "inherently dangerous" activity exception to the independent contractor rule for two reasons. The court first observed that the New Jersey courts consider the exception a vicarious liability theory. Then, assuming that the exception imposed a direct duty on the government,

---

**2.** Merklin cites a number of cases holding that the discretionary function exception does not bar good samaritan claims. *See, e.g., Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (Coast Guard had a duty to maintain lighthouses); *Barnson v. United States*, 531 F.Supp. 614 (D. Utah 1982) (United States' provision of medical care to uranium miners raised a duty). These cases are inapposite, however, because they were decided prior to *Varig Airlines* and rest on the erroneous perception that *Indian Towing Co.* permits good samaritan claims under the FTCA. *See Varig Airlines*, 104 S.Ct. at 2764.

**3.** Even if we concluded, as appellant urges, that he had properly preserved the substantial control exception on appeal, we would find no merit in this theory. Although the exception may seem to be a matter of state law, it is governed by federal law because it implicates

the definition of the term "agency" for the purposes of the FTCA. *See* 28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). According to the Supreme Court's decision in *Orleans*, the fact of a broad, supervisory control, or even the potential to exercise detailed control, does not convert the independent contractor into an agent of the United States for FTCA purposes. Simply retaining control of the manner in which the independent contractor's work was to be performed is insufficient governmental involvement on which to predicate liability. *See Gibson*, 567 F.2d at 1242–43. We hold that the record supports the district court's conclusion that the AEC's control over the source materials and its specification of the quality of the finished product do not expose the United States to liability under this exception.

the court noted that New Jersey precedent clearly held that the doctrine did not protect employees of the contractor.

Under New Jersey law, an "inherently dangerous" activity is work that involves "a grave and peculiar risk of harm to others unless special precautions are taken." *Rodrigues v. Elizabethtown Gas Co.,* 104 N.J.Super. 436, 443, 250 A.2d 408, 412 (App.Div.1969). We agree with the district court that the handling and processing of radioactive materials properly fall in this category.[4] We disagree, however, with the court's conclusion that the exception imposes an indirect duty on the government. It is true that New Jersey courts have labeled this doctrine a vicarious liability tort, *see Donch v. Delta Inspection Services, Inc.,* 165 N.J.Super. 567, 570, 398 A.2d 925, 927 (Law Div.1979). Nevertheless, according to our decision in *Toole v. United States,* 588 F.2d 403 (3d Cir.1978), the state court's characterization of the doctrine does not terminate the analysis. The *Toole* court observed that the absence of Pennsylvania precedent addressing the existence of direct employer liability was founded on the fact that vicarious liability is easier to prove than direct negligence. The existence of a well established vicarious liability theory therefore made the development of a direct liability theory unnecessary. The court also observed that Pennsylvania law allowed an independent contractor's employees to recover damages against the employer who hired the contractor for inherently dangerous work. Under these circumstances, the *Toole* court predicted that Pennsylvania courts would find that the employer owed a direct duty to the contractor's employees. *Id.* at 407. This rule comports with the Nevada and California courts' statement of the doctrine. *See McGarry v. United States,* 549 F.2d 587 (9th Cir.1976), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977) (Nevada

law); *United States v. Babbs,* 483 F.2d 308 (9th Cir.1973) (California law). We have found no New Jersey case that adopts or rejects a direct negligence theory under the inherently dangerous work exception. Bearing in mind the New Jersey courts' willingness to reexamine traditional tort doctrine, *see Becker v. Interstate Properties,* 569 F.2d 1203, 1209 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978), we predict that the New Jersey courts would permit recovery to third parties injured by an independent contractor's negligence under a direct liability theory.

■ We agree with the district court that New Jersey would prohibit the contractor's employees from recovering against the employer. The traditional approach holds that the inherently dangerous doctrine protects only third parties and not the contractor's employees. Unlike the Pennsylvania courts, the New Jersey courts have rejected the suggestion that the employees of an independent contractor may recover against the employer on the ground that the employer has already paid for the employees' workman's compensation in the price paid for the work. The New Jersey courts embrace the view that workman's compensation provides the preferred scheme for the redress of occupational injuries. The *Donch* court reasoned:

Employees of the contractor have available the workers' compensation system. If the inherent danger exception were applied here, an injured employee could receive a compensation award and still have a right of action for that same independent contractor's negligence based on vicarious liability of the party who engaged the contractor. The Legislature, by creating the workers' compensation system, assured the employee's remedy. In turn, the employee must rec-

---

4. Courts often employ the term "inherently dangerous" to refer both to ultrahazardous activity and to work that is dangerous under the particular circumstances in which it is performed. *See Wilson v. Good Humor Corp.,* 757 F.2d 1293, 1303 (D.C.Cir.1985) (District of Columbia law);

*Toole v. United States,* 588 F.2d 403, 407 n. 6 (3d Cir.1978) (Pennsylvania law). New Jersey apparently has restricted the term's use to ultrahazardous activities. *See Donch v. Delta Inspection Services, Inc.,* 165 N.J.Super. 567, 571, 398 A.2d 925, 927 (Law Div.1979).

ognize the expectations of the party who engages his or her employer. *Donch,* 165 N.J.Super. at 574, 398 A.2d at 925. If Merklin's cancer stems from radioactive exposure during his employment with Grace, he may have been eligible for workman's compensation. *See, e.g.,* N.J. Stat.Ann. § 34:15–34 (Supp.1986). Because the State's courts have identified the legislature as the primary actor in this area, it would be improper for us to extend the doctrine.

We hold therefore that the district court did not err in concluding that the government owed no duty to Merklin as the employee of an independent contractor.

### V.

Merklin maintains that the AEC, as the supplier of a chattel with dangerous nonobvious propensities, owed a duty to warn Grace's employees of the danger associated in the handling of the chattel. The court below treated this theory as a subset of the independent contractor doctrine and determined that the theory could not be used against the government. We conclude that a theory of liability premised on the supplier of a product's superior knowledge of the product is a separate and viable theory in this case.

New Jersey courts recognize the rule that a supplier of a dangerous chattel owes a duty to take reasonable measures to warn adequately those who will foreseeably come in contact with the product of the product's inherent risks. *See O'Donnell v. Asplundh Tree Expert Co.,* 13 N.J. 319, 333–35, 99 A.2d 577, 581 (1953); *Arcell v. Ashland Chemical Co., Inc.,* 152 N.J.Super. 471, 492, 378 A.2d 53, 64 (Law Div. 1977). *See also Restatement (Second) of Torts,* §§ 388, 389.[5] The duty to warn in negligence actions is determined by the state of the knowledge of the product's dangerous propensities at the time the product left the supplier's control. The New Jersey courts examine whether the defendant had actual or constructive

---

**5.** These sections provide:

§ 388. Chattel Known to be Dangerous for Intended Use
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
§ 389. Chattel Unlikely to be Made Safe for Use
One who supplies directly or through a third person a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a sue which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel or whose knowledge thereof does not make them contributorily negligent, although the supplier has informed the other for whose use the chattel is supplied of its dangerous character.

Appellant also asserts that the government is liable for providing radioactive ores that are dangerous for their intended use under Restatement § 392, which provides:

§ 392. Chattel Dangerous for Intended Use
One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied.
(a) if the supplier fails to exercise reasonable care to make the chattel safe for use for which it is supplied, or
(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

This section is inapposite. It is designed to cover those situations where an otherwise safe product contains a hidden defect. Not only are the source materials inherently dangerous, but Merklin does not allege that they are unsuitable for their intended use.

knowledge of the danger "given the scientific, technological, and other information available when the product was distributed." *Feldman v. Lederle Laboratories*, 97 N.J. 429, 452, 479 A.2d 374, 386 (1984); *see Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 204, 447 A.2d 539, 546 (1982).

■ Another limitation on the duty to warn exists when the plaintiff is a "knowledgeable user." This doctrine states that the supplier of a dangerous chattel has no duty to warn those who are experienced in the handling of the chattel. Such knowledgeable users are deemed to possess a thorough understanding of the product, including its inherent risks. Because both the supplier's and user's appreciation of the risks involved are equivalent, the supplier is no longer in a better position to warn and prior notice of the product's dangerous propensities would be superfluous: "no one needs notice of that which he already knows." *Billiar v. Minnesota Mining and Manufacturing Co.*, 623 F.2d 240, 243 (2d Cir.1980); *see Toppi v. United States*, 332 F.Supp. 513, 517 (E.D.Pa.1971). The doctrine applies only to professionals and skilled tradespeople. *See Billiar*, 623 F.2d at 242. Although the New Jersey courts have not yet considered this doctrine, we are confident that they would adopt it. *Cf. Campos v. Firestone Tire & Rubber Co.*, 98 N.J. 198, 208, 485 A.2d 305, 310 (1984) (doctrine does not apply in strict liability action when work is unskilled or semi-skilled).

It is clear to us that the radioactive monazite ore and its refined derivatives are dangerous products for the purposes of this theory. *See, e.g., Arcell*, 152 N.J.Super. at 492, 378 A.2d at 64 (toxic chemicals); *Toppi*, 332 F.Supp. at 517 (explosive chemicals). It is not clear, however, whether Merklin can be classified as a knowledgeable user. Although his position as a foreman in the processing plant indicates some understanding of the properties of radioactive ore, this fact is not dispositive. Moreover, appellant specifically states in his amended complaint that he was unaware of the risks involved in his contact with the radioactive ores and chemicals. Under these circumstances, we hold that Merklin has presented a prima facie case under the supplier of a dangerous chattel theory, and that the district court erred in granting the government's motion to dismiss.

### VI.

On remand, the district court should hold a hearing to determine the nature and extent of Merklin's understanding of the risks involved in handling the monazite ore and its derivatives. If the court finds that Merklin was fully aware of the risks of exposure to source materials, as generally known at the time, such that additional warnings by the AEC would have been unnecessary, the court should enter judgment for the government.

For the reasons discussed, we will reverse and remand to the district court for further action in accordance with this opinion. Each side to bear its own costs.