240 N.J. Super. 470 (1989)
573 A.2d 922
DEBORAH A. MEDER, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE HEIRS OF CHRISTOPHER J. MEDER, DECEASED; AS ADMINISTRATRIX OF THE ESTATE OF CHRISTOPHER J. MEDER, DECEASED AND INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
RESORTS INTERNATIONAL HOTEL, INC., DEFENDANT-RESPONDENT, AND MEEHAN & WEINMANN INC., L. FERIOZZI CONCRETE COMPANY, MEEHAN & WEINMANN INC. AND L. FERIOZZI CONCRETE COMPANY, CO-VENTURERS, NORMAN PARKER, H.J. HOMAN CRANE COMPANY, HENRY STEWART CO., ATLANTIC INDUSTRIAL HARDWARE CO., WALL INDUSTRIAL CO., INC., WALL INDUSTRIES, INC., JOHN DOE, ROBERT DOE, CHARLES DOE AND ACROW CORPORATION OF AMERICA, JOINTLY AND SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS, AND RESORTS INTERNATIONAL HOTEL, INC., DEFENDANT-THIRD-PARTY PLAINTIFF,
v.
CLAREMONT INTERIOR CONTRACTORS, INC., THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1989.
Decided November 17, 1989.
*472 Before Judges GAULKIN, DREIER and SCALERA.
Salvatore A. Alessi argued the cause for Deborah A. Meder (A-2577-88T5) (Alessi & Abbott, attorneys).
Brian S. Thomas argued the cause for Resorts International Hotel, Inc. (A-2577-88T5 and A-2969-88T5) (Megargee, Youngblood, Franklin & Corcoran, attorneys).
Anthony D. Buonadonna argued the cause for Claremont Interior Contractors Inc. (A-2969-88T5) (Buonadonna & Benson, attorneys; Alan G. Giebner, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
In these appeals, which we now consolidate for disposition, plaintiff Deborah A. Meder challenges the dismissal of her action at the conclusion of all of the proofs (A-2577-88T5), and third-party defendant Claremont Interior Contractors, Inc. (Claremont) challenges a pretrial order denying its motion to dismiss the third-party complaint of defendant Resorts International Hotel, Inc. (Resorts) for indemnification (A-2969-88T5).
The litigation arose out of the death of plaintiff's husband Christopher J. Meder (Meder) while employed by Claremont in the construction of a high-rise hotel building for Resorts. Resorts had contracted with Claremont to stock the building with metal, metal studs and sheet rock. Meder was employed as a signalman by Claremont, assigned to receive the materials as they were delivered to each floor by a crane. While Meder was so engaged on the 13th floor, an accident occurred which resulted in his falling or being thrown from the building to the ground.
*473 Plaintiff brought her action against a number of defendants, all of which, except for Resorts, were either dismissed prior to trial or settled during trial. At the conclusion of all the proofs, the trial judge dismissed the action against Resorts, concluding that there was no "basis for the independent finding of negligence and culpability against [Resorts]." The judge accordingly dismissed Resorts' third-party complaint for indemnification against Claremont. Plaintiff now appeals from the dismissal of her action against Resorts (A-2577-88T5). Claremont appeals from the trial judge's pretrial determination that Claremont was contractually obligated to indemnify Resorts unless "Resorts is perchance found to be the only negligent defendant;" at oral argument, counsel for Claremont represented that his appeal need be addressed only if we reverse the dismissal of plaintiff's complaint against Resorts.

I.
The essence of plaintiff's claim is that Resorts acted as general contractor and thereby assumed a duty to provide a safe place for Meder to work. Certain conditions of the work place, plaintiff says, violated applicable regulations of the Occupational Health and Safety Administration (OSHA). Relying on Bortz v. Rammel, 151 N.J. Super. 312, 376 A.2d 1261 (App.Div. 1977), cert. den., 75 N.J. 539, 384 A.2d 518 (1977), plaintiff says that Resorts is responsible for those unsafe conditions. Resorts concedes that it hired the various contractors on the job and assumed the responsibility of coordinating their work, but asserts that it did not attempt to direct or control the manner in which they performed their contracts. Resorts contends that the alleged unsafe conditions were "due to the actions of Claremont and its employees," and that Resorts is not liable either as owner or general contractor "for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed," citing Wolczak v. National Electric Products Corp., 66 N.J. Super. 64, 168 A.2d 412 (App.Div. 1961).
*474 Plaintiff's proofs at trial were not sufficiently focused to permit us to recite with particularity each of the allegedly unsafe conditions for which plaintiff ascribed responsibility to Resorts. However, at least two unsafe conditions were identified. First, it was undisputed that at the time of the accident Meder was tethered to the building superstructure by a 3/8 inch polypropylene rope rather than a 3/4 to 7/8 inch manila hemp rope required, plaintiff's expert testified, by OSHA regulations. See 29 C.F.R. § 1926.104(c). Second, although the perimeter of the open 13th floor had been enclosed by safety cables, those cables had been partially removed to accommodate the "monster", a large movable platform which received the materials hoisted by the crane; it was in that vicinity that Meder fell or was thrown from the building. That condition was arguably a violation of OSHA regulations. See 29 C.F.R. § 1926.500. Thus the record discloses at least two conditions which a jury might find to have violated OSHA regulations and to have proximately caused the accident. The question is whether Resorts is responsible for those conditions.
As Resorts points out, Wolczak recited and applied the general principle that
Absent control over the job location or direction of the manner in which the delegated tasks are carried out, the general contractor is not liable for injuries to employees of the subcontractor resulting from either the condition of the premises or the manner in which the work is performed.
66 N.J. Super. at 71, 168 A.2d 412. That rule applies to the landowner as well as the general contractor. See Rodrigues v. Elizabethtown Gas Co., 104 N.J. Super. 436, 442-43, 250 A.2d 408 (App.Div. 1969).
Bortz, however, found that rule to have been "substantially qualified by subsequent legislative action." 151 N.J. Super. at 319, 376 A.2d 1261. The court there took note of the adoption, following the "restrictive decision" in Wolczak, of the Construction Safety Act, N.J.S.A. 34:5-166 et seq., which was
expressly designed to protect the health and safety of all construction employees as well as the public in general by requiring all construction employers to comply with all safety rules and regulations promulgated under the act.
*475 Id. Of "primary importance," the Bortz court held, was N.J.A.C. 12:180-3.15.1, part of the Construction Safety Code promulgated pursuant to the Act, which mandated that
where one contractor is selected to execute the work of the project, he shall assure compliance with the requirements of this Chapter from his employees as well as all subcontractors.
Given the legislation and regulations, the Bortz court held that the general contractor could be found to have "a statutory obligation to take the necessary steps to insure the safety of [the subcontractor's] employees and that he failed to do so." 151 N.J. Super. at 320, 376 A.2d 1261.
The Bortz court thus found that the legislation and regulations had "a substantial impact on the continued viability of our quoted holding in Wolczak." 151 N.J. Super. at 320, 376 A.2d 1261. Invoking the rule that deviation from a statutory standard of conduct is a "relevant circumstance to be considered by the trier of fact in assessing tort liability," as well as the principle of Restatement, Torts 2d, § 874A that a legislative provision may justify the court's granting a right of action to a member of the class sought to be benefited, the court held that
It was obviously the legislative intention to ensure the protection of all of the workers on a construction project, irrespective of the identity and status of their various and several employers, by requiring, either by agreement or by operation of law, the designation of a single repository of the responsibility for the safety of them all. The assurance of prospective and continuing compliance by that repository with his responsibility demands, in our view, a right of tort action in those who are injured when there is a failure of compliance.
Id. at 320-21, 376 A.2d 1261.
On its face, Bortz would appear to require that plaintiff's case here be put to the jury. But as of April 1, 1975, the then Commissioner of Labor and Industry announced the withdrawal of the New Jersey State Plan for Occupational Safety and Health, whereupon jurisdiction was vested with the United States Department of Labor for the regulation of occupational safety and health under the Federal Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq. See 7 N.J.R. 231 (May 8, 1975). As a result, the Construction Safety Code *476 promulgated under the Construction Safety Act, N.J.S.A. 34:5-166 et seq. was repealed. 10 N.J.R. 258 (June 8, 1978). The Construction Safety Act itself, however, remained in effect.
In dismissing plaintiff's complaint, the trial judge relied principally on the fact that the regulations relied on in Bortz had been repealed. Because of that repeal, the judge reasoned,
I am now back at Point A with Wolczak. The statutory right, the cause of action created by the provisions of the regulations as interpreted [in Bortz], it is my judgment, is no longer applicable.
While the OSHA regulations impose obligations upon an "employer," the judge found that they do not "include owner in its definition." Accordingly, the judge applied the principles stated in Wolczak and dismissed plaintiff's complaint.
We find that analysis flawed. The OSHA regulations direct that
no contractor or subcontractor for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety.
29 C.F.R. § 1926.20(a). The regulations also impose upon "the employer" the responsibility "to initiate and maintain such programs as may be necessary" to comply with OSHA's prohibition on "[t]he use of any machinery, tool, material, or equipment which is not in compliance with any applicable requirement of [OSHA regulations]." 29 C.F.R. § 1926.20(b)(1), (3). The "employer" is also "responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions." 29 C.F.R. § 1926.28(a).
Under 29 C.F.R. § 1926.50(j) the term "employer" means "contractor or subcontractor." That a prime or general contractor bears responsibility for all OSHA violations on the job is made clear by 29 C.F.R. § 1926.16:
(a) The prime contractor and any subcontractors may make their own arrangements with respect to obligations which might be more appropriately treated on a jobsite basis rather than individually.... In no case shall the prime contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract.

*477 (b) By contracting for full performance of a contract..., the prime contractor assumes all obligations proscribed as employer obligations under the standards contained in this part, whether or not he subcontracts any part of the work.
(c) To the extent that a subcontractor of any tier agrees to perform any part of the contract, he also assumes responsibility for complying with the standards in this part with respect to that part. Thus, the prime contractor assumes the entire responsibility under the contract and the subcontractor assumes the responsibility with respect to his portion of the work. With respect to subcontracted work, the prime contractor and any subcontractor or subcontractors shall be deemed to have joint responsibility.
Resorts does not dispute that it performed the role and assumed the responsibilities of prime contractor on this job. We are satisfied that the OSHA regulations imposed obligations upon Resorts essentially comparable to those imposed on general contractors by the regulations relied on in Bortz. The fact that New Jersey has ceded regulation of occupational safety and health to OSHA does not in any way affect the public policy expressed and applied by Bortz. In our view, violation of the obligations imposed by the federal regulations supports a tort claim under state law. Cf. Sanna v. National Sponge Co., 209 N.J. Super. 60, 69, 506 A.2d 1258 (App.Div. 1986).
Since a jury could properly find that Meder's death was proximately caused by Resorts' negligent failure to assure compliance with OSHA regulations, the dismissal of plaintiff's complaint must be reversed.

II.
Resorts' third-party claim against Claremont for indemnification is based upon three provisions of the contract documents.
Paragraph XIV of the General Conditions, entitled "Contractor's Liability Insurance," provides:
(b) At all times during the term hereof Contractor shall keep in force public liability insurance ... naming as insured both Owner and Contractor.... Contractor shall require all subcontractors to provide like coverage ... naming Owner, its parent or subsidiaries as additional named insured. In addition, Contractor and subcontractors shall maintain employees liability insurance ... *478 as will protect it from claims under workmen's compensation laws which may arise from and during operations under the contract whether such operation be by Contractor or by any subcontractor or anyone directly or indirectly employed by either of them. Contractor further agrees to indemnify Owner and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury or damage to property occurring in or about or arising out of the performance of this contract or occasioned wholly or in part by any act or omission of Contractor, its subcontractors, agents or employees. In case Owner shall be made a party to any litigation commenced by or against Contractor, its subcontractors, agents, or employees, then Contractor shall protect and hold Owner harmless and shall pay all costs, expense and reasonable attorneys' fees incurred or paid by Owner in connection with such litigation provided Owner is not found liable to Contractor in any such litigation.
Paragraph XV of the General Conditions, "Indemnity by Contractor," provides:
Contractor agrees to indemnify and hold Owner harmless from liability for any and all losses, claims, damages, expenses and causes of action of every nature whatsoever which may arise out of, or in connection with Contractor's performance under this Purchase Order and which are caused by any act or omission of Contractor or its subcontractors, their servants, agents or employees.
Subparagraph 11.3.1 of the Supplemental Conditions provides:
The Contractor shall assume the entire responsibility and liability for losses, expenses, demands and claims in connection with or arising out of any injury, or alleged injury, including death or death resulting therefrom ..., to any person or damage or alleged damage, to property of the Owner or other sustained or alleged to have been sustained in connection with or to have arisen out of or resulting directly or indirectly from the performance of the work by the Contractor, his subcontractors, agents and employees, including losses, expenses or damages sustained by Owner, and agrees to indemnify and hold harmless Owner, his agents and employees from any and all such losses, expenses, damages, demands and claims and agrees to defend any suit or action brought against them, or any of them, based on any such alleged injury or damage, and to pay all damages, costs and expenses in connection therewith or resulting therefrom....
Since, for the reasons expressed above, plaintiff can recover judgment only upon a showing of Resorts' fault, the threshold question is whether these provisions should be construed to indemnify Resorts against losses resulting from its own negligence. Such a construction will not be indulged unless that intention "is expressed in unequivocal terms." Ramos v. Browning Ferris Industries, 103 N.J. 177, 191, 510 A.2d 1152 *479 (1986). We do not find the contract provisions to unequivocally express such an intention.
Paragraph XV describes the indemnification obligation as requiring both a loss arising out of Claremont's performance of its contract and caused by the conduct of Claremont or its subcontractors. That is a fairly direct expression of an intent that Claremont shall indemnify Resorts only for losses arising out of its own, or its subcontractors', conduct. The language of subparagraph 11.3.1 is less direct, but similarly suggests that Claremont did not undertake to indemnify Resorts for its own negligence. There Claremont agreed to indemnify Resorts for all losses
sustained or alleged to have been sustained in connection with or to have arisen out of or resulting directly or indirectly from the performance of the work by [Claremont], his subcontractors, agents and employees.
Although Claremont's obligation as thus stated does not turn, as in paragraph XV, on whether the loss is "caused by" Claremont or its subcontractors, it applies only to losses arising "from the performance of the work" by Claremont and its subcontractors and agents. Losses arising from Resorts' independent negligence cannot easily be characterized as resulting from the performance of the work by Claremont.
Paragraph XIV of the General Conditions provides somewhat more support to Resorts' contention, but hardly is the unequivocal expression required by Ramos. There Claremont agreed to indemnify Resorts for losses "occurring in or about or arising out of the performance of this contract or occasioned wholly or in part by any act or omission of [Claremont]." Unlike Paragraph XV, Paragraph XIV thus states the conditions of Claremont's liability disjunctively rather than conjunctively. And, unlike subparagraph 11.3.1, paragraph XIV does not provide that the losses must arise out of the performance of the contract by Claremont. But if there is any arguable clarity in paragraph XIV, it quickly dissipates when that language is read, as it must be, in conjunction with the quite different language of paragraph XV and subparagraph 11.3.1.
*480 We thus conclude that the contractual provisions do not unequivocally express an intention that Claremont will indemnify Resorts for its own negligence. If anything, the three indemnity provisions together suggest the contrary intent; that reading is supported by the principle that ambiguities in an indemnification agreement are to be strictly construed against the indemnitee. Ramos, 103 N.J. at 191, 510 A.2d 1152. Claremont was accordingly entitled to dismissal of the third-party complaint. Cf. McCabe v. Great Pacific Century Corp., 236 N.J. Super. 488, 566 A.2d 234 (App.Div. 1989); Gulf Oil Corp. v. ACF Industries, 221 N.J. Super. 420, 428-29, 534 A.2d 1025 (App.Div. 1987).

III.
In A-2577-88T5, we reverse the January 13, 1989 order dismissing the complaint and remand that aspect of the case to the Law Division for a new trial. In A-2969-88T5, we reverse the denial of Claremont's motion for summary judgment and remand that aspect to the Law Division for entry of an order dismissing the third-party complaint.