Paul W. KANDARGE, Plaintiff,

v.

The UNITED STATES DEPT. OF the NAVY and/or The United States Government, Defendants/Third Party Plaintiffs,

v.

PHILLYSHIP, Third Party Defendant.

Civ. A. No. 93–3084 (JEI).

United States District Court,
D. New Jersey.

April 6, 1994.

Hockfield, Hasner, Weiss & Rosenberg, P.A. by Michael A. Weiss, Cherry Hill, NJ, for plaintiff.

Michael Chertoff, U.S. Atty. by Paul A. Blaine, Asst. U.S. Atty., Camden, NJ, for defendant/third party plaintiff.

Palmer, Biezup & Henderson by David P. Thompson, Camden, NJ, for third party defendant.

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT

IRENAS, District Judge:

### I. INTRODUCTION

Plaintiff, Paul Kandarge, sustained personal injuries while excavating a ditch as an employee of a contractor hired to perform certain work at a government installation in Trenton, New Jersey. Plaintiff sued the United States Department of the Navy ("USN") and the United States Government under the provisions of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80. The defendants in turn filed a third party complaint against the contractor, Phillyship. The jurisdiction of this court is found in 28 U.S.C. § 1346(b).

■ Defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56.[1] Because we find that (i) the claims against the governmental entities are barred by the discretionary acts exception found in § 2680(a) of the FTCA and (ii) there is not, in any case, a viable New Jersey cause of action, the motion for summary judgment will be granted in its entirety, and the third party complaint will be dismissed as moot.

1. Plaintiff had been precluded from submitting opposition to the motion pursuant to the February 15, 1994 order of the Hon. Robert B. Kugler, U.S.M.J. Defendant's motion was filed on November 17, 1993 in accord with Local R. 12 N's dispositive motion procedures. For more than eight weeks plaintiff failed to serve any responsive papers. Despite this unexplained lapse, Judge Kugler, on February 3, 1994, afforded plaintiff's attorney an additional 6 calendar days to submit responsive opposition to the motion with the caution that non-compliance would result in defendant's application being considered unopposed. Counsel again failed to file a response, and on February 15, Judge Kugler prohibited him from submitting any opposition to defendant's motion. Plaintiff's counsel again disregarded Judge Kugler's order and filed and served opposition pleadings on February 17, 1994, while on the same day filing a motion for reconsideration, pursuant to Local R. 12 I, of that same order. On March 18, 1994, Judge

### II. BACKGROUND

On June 23, 1992, plaintiff was working in an excavation ditch when the walls of the ditch collapsed, allegedly causing him severe personal injuries. At the time of the accident Mr. Kandarge was an employee of third party defendant, Phillyship. The parties concur that the proximate cause of the accident and plaintiff's injuries was the lack of shoring to support the walls.[2]

On September 30, 1991, Phillyship entered into a contract with the USN to excavate and replace several underground water valves at defendants' Naval Air Warfare Center ("NAWC"), formerly the Naval Air Propulsion Center, in Trenton, New Jersey.

Before Phillyship began work on the contract, its representatives met with USN contracting officials in a preconstruction conference on October 31, 1991. In this meeting, the contractor was informed that excavation shoring would be required because the ground was soft and the USN officers received a mandatory Accident Prevention Plan which specified that Phillyship would utilize "proper shoring" in the excavation process. Def.'s Ex. B. Indeed, the contract explicitly incorporated by reference, specifications contained in NAVFAC No. 04–91–6911 which directed the contractor to "[p]rovide shoring and sheeting where required" for the purpose of "[p]revent[ing] slippage or movement in banks or slopes adjacent to the excavation." Def.'s Ex. A, at 25.

Kugler denied Mr. Kandarge's motion for reconsideration.

On March 25, 1994, an appeal of Judge Kugler's denial of plaintiff's reconsideration motion was filed with this Court. Because we are under an independent obligation (See Fed.R.Civ.P. 56(e)) to review the pleadings and moving papers to insure that defendants have met their burden of going forward with sufficient evidence to justify the entry of summary judgment, we have considered the plaintiff's opposition papers in rendering our decision. Accordingly, plaintiff's appeal of Judge Kugler's order will be denied as moot because we have reviewed and considered his opposition to the motion.

2. Shoring is defined as a "structure such as a metal hydraulic, mechanical or timber shoring system that supports the sides of an excavation and which is designed to prevent cave-ins." 29 C.F.R. § 1926.650.

On January 14, 1992, the contract was modified because field testing and backfilling of the excavation site, conducted by Phillyship, revealed that the underground valves were deeper than both parties originally thought. The modification permitted the contractor to increase the price by $5,862.00 which included the costs of shoring and excavating the area in accord with Occupational Safety and Health Administration ("OSHA") regulations. Def.'s Ex. A, at 3–4.

The contract documents, incorporated by reference several provisions of 48 C.F.R. Ch. 1, known as the Federal Acquisition Regulations ("FAR"), and imposed upon Phillyship the obligation to (1) ensure the work place safety of its employees, (48 C.F.R. § 52.236-7); (2) to monitor and inspect its work progress and compliance with contract requirements on a daily basis, (48 C.F.R. § 52.246.-12); and (3) an accident prevention clause (48 C.F.R. § 52.236–13).

The accident prevention clause, referred to in § 52.236–13 required Phillyship to "provide for [the] protect[ion] [of] the lives and health of employees and other persons...." and "[c]omply with the standards [mandated by] 29 C.F.R. part 1926 and 29 C.F.R. part 1910; ...."[3] Subparagraph d of this clause also delineated the contracting officer's and the contractor's responsibilities concerning contract compliance:

> The [officer] shall notify the Contractor of any noncompliance with these requirements and of the corrective action required. This notice, when delivered to the Contractor ... at the site of the work, shall be deemed sufficient notice of the noncompliance and corrective action required.... If the Contractor fails or refuses to take corrective action promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.

48 C.F.R. § 52.236–16.

48 C.F.R. § 52.246–12(c) and (d), incorporated into the contract by reference, provided that Government inspections were solely for its benefit and "the presence or absence of a Government inspector does not relieve the Contractor from any contract requirement...."

At approximately 8:00 a.m. on the second day of the excavation project, June 23, 1992, defendants' contract inspector, Bill Merkle, observed Phillyship's employees at the work site for a brief period of time. Mr. Merkle was assigned to monitor the contractor's compliance with and the progress of the contract but emphatically asserts that he was not responsible for direct supervision or control of the undertaking. Merkle Aff. ¶ 7. On this date, no untoward events were noted in Phillyship's operation of the work site.

Mr. Kandarge was allegedly warned on at least three separate occasions, by naval employees Walter Shimp, George Trick and Bernard Seighman, Jr., that he was placing himself in danger if he continued to work inside the excavation ditch without the shoring to reinforce the earthen walls. Shortly thereafter, the ditch collapsed onto plaintiff, causing him serious injuries.

Although Mr. Kandarge disputes that anyone ever warned him of this danger and contends that he was unaware of the tenuous nature of the soil's composition, the conflict over these facts are not material to the issues presented by defendants' motion.

Plaintiff's two count complaint under the FTCA alleges that defendants negligently failed to: i) provide plaintiff a safe work place; ii) monitor construction; iii) institute or require its contractors to implement an appropriate safety program; and iv) adhere to proper safety and building standards promulgated by OSHA.

Defendants argue that this Court has no subject matter jurisdiction because the FTCA does not extend its waiver of sovereign immunity to the negligent acts of independent contractors, 28 U.S.C. § 2671, or to liability based upon the performance or the failure to perform a discretionary function or duty by a federal agency or an employee of the Government, whether or not the discre-

---

**3.** 29 C.F.R. parts 1910 and 1926 provide a detailed regulatory framework for work place safety.

tion involved is abused. 28 U.S.C. § 2680(a). Defendants also assert that they owed no common law duty, as the landowner of the premises, to protect Mr. Kandarge from the inherent danger of the activity, excavation, in which he was engaged on the date of the accident.

### III. STANDARD FOR SUMMARY JUDGMENT

The standard for granting a motion for summary judgment under Fed.R.Civ.P. Rule 56 is demanding and stringent. *Wilson v. Sullivan*, 709 F.Supp. 1351 (D.N.J.1989). Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party such that a reasonable jury could return a verdict for that party. *Id.* at 248, 106 S.Ct. at 2510.

■ The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 249, 106 S.Ct. at 2510.

■ If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penn. Teamsters Health &* *Welfare Fund,* 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus. Inc. v. Local 825, Int'l Union of Operating Engineers,* 982 F.2d 884, 890–91 (3d Cir.1992).

### IV. DISCUSSION

#### A. Subject Matter Jurisdiction

The FTCA is a broad waiver of sovereign immunity, granting district courts jurisdiction to hear tort suits against the United States for damages:

> For injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting in the scope of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

■ The FTCA does not waive sovereign immunity for strict or vicarious liability. 28 U.S.C. § 2671; *See Gibson v. United States,* 567 F.2d 1237, 1243 (3d Cir.1977), *cert. denied,* 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978) (declaring that Government cannot be held vicariously liable for its negligent supervision and control over a work site in which it employs an independent contractor) (citing *Fisher v. United States,* 441 F.2d 1288 (3d Cir.1971)). Plaintiff appears to concede this limitation, and his complaint does not assert a theory of vicarious liability. Rather, his complaint alleges that defendants are directly liable because of their failure to provide a safe work place and *inter alia,* to institute or require the contractor to implement appropriate safety measures at the excavation site.

■ Defendants also rely on the discretionary function exception, 28 U.S.C. § 2680(a), which exempts:

> [a]ny claim based upon an act or omission of any employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretion-

ary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

*Id.* Because § 2680 is a limitation on the waiver of sovereign immunity, cases which fall within the discretionary function exception necessarily must be dismissed, as a matter of law, for lack of subject matter jurisdiction. *Clark v. United States Dept. of Army,* 805 F.Supp. 84, 87 (D.N.H.1992).

■ *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) articulated a two-step analysis to determine whether an act or omission of a Government employee is shielded by the discretionary function exception. First, the discretionary function exception covers only acts or omissions which are discretionary in nature, that is, involving an element of judgment or choice. The nature of the conduct, rather than the status of the actor, governs whether the exception applies. *Id.* at 325, 111 S.Ct. at 1275. If the challenged act or omission does not involve the exercise of choice or judgment, or if federal statutes or regulations, or policies specifically prescribe courses of action for an employee to follow, then the discretionary function exception does not apply. *Id.* at 324, 111 S.Ct. at 1274.

Second, the discretionary function exception, when properly construed, protects only government actions and decisions based on considerations of public policy. *Id.* at 323, 111 S.Ct. at 1273. A suit is barred only if a Government employee's judgment or choice furthers the purposes of a regulatory regime which gives an employee such discretion. *Id.* at 324–25, 111 S.Ct. at 1274–75. The rationale which underlies the discretionary function exception is to prevent "judicial second guessing" of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort. *Id.* at 323, 111 S.Ct. at 1273.

■ Government contracts, which delegate primary responsibility for work site safety to the independent contractor pursuant to FAR, while leaving to itself an oversight role, are examples of policy choices protected by the discretionary function exception. *White v. United States Dept. of Interior,* 656 F.Supp.

25, 33 (M.D.Pa.1986), *aff'd,* 815 F.2d 697 (3d Cir.1987) (citing *Feyers v. United States,* 749 F.2d 1222, 1227 (6th Cir.1984)) (holding that government decision to delegate safety responsibility to a contractor is a discretionary function despite retention of the right to inspect and stop work); *accord, Duff v. United States Air Force,* 999 F.2d 1280, 1281 (8th Cir.1993); *Clark,* 805 F.Supp. at 83.

In *White,* the government contracted with an independent contractor to backfill obsolete mines, and one of the contractor's employees met an untimely demise during the course of the project. The contract incorporated the identical accident prevention clauses from 48 C.F.R. § 52.236.13 which are at issue in this case. In holding for the defendants the court noted that "when an agency determines the extent to which, it will supervise the safety procedures of private individuals, it 'is exercising discretionary regulatory authority of the most basic kind.'" *White, supra,* at 31 (quoting *General Public Utilities Corp. v. United States,* 745 F.2d 239, 243 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985)).

Plaintiff's expert, Vincent A. Gallagher, avers that the Navy's delegation of and failure to enforce Phillyship's compliance with safety regulations at the accident site forms the basis of a viable negligence theory. Mr. Gallagher relies on 29 C.F.R. § 1926.16(a), for the proposition that "... in no case shall the primary contractor be relieved of overall responsibility for compliance with the requirements of this part for all work to be performed under the contract."

■ Plaintiff's assertion that the government failed to institute and implement adequate safety regulations are strikingly similar to the allegations in *White.* In this case, as in *White,* 656 F.Supp. at 34, the contract required compliance with 29 C.F.R. part 1926. The regulations relevant to excavations, § 1926.650 *et seq.,* and accident prevention, § 1926.20 *et seq.,* do not impose upon the Government any mandatory safety obligations. In fact, the employer, *i.e.* Phillyship, is explicitly directed to undertake safety precautions for the benefit of its employees. 29 C.F.R. § 1926.20(b).

The *White* court found that the Government's decision concerning the manner of enforcing the regulations is also discretionary and reasoned:

> The government could not affirmatively enforce these regulations, or mandate the use of particular safety equipment and procedures without first determining the necessity of such equipment and procedures. This would have involved carefully evaluating the factors outlined in the regulations.... The subsequent decision of the government not to make the determinations required by [the regulation] itself was discretionary because it involved the balancing of the efficacy of itself determining the soil characteristics, the condition[s] ... against the cost of making such determinations.
>
> . . . .
>
> The government cannot be held liable for allegedly negligent failure to enforce where a decision to affirmatively enforce would have entailed extensive testing and determinations duplicative of the determinations the contractor was charged with making.

*White,* 656 F.Supp. at 34–35 (footnote omitted); *see also Merklin v. United States,* 788 F.2d 172, 174 (3d Cir.1986) (holding that Government agency could not be held liable for its allegedly negligent inspection of an independent contractor's safety procedures pursuant to discretionary function exception).

Phillyship's contract documents required it to implement a shoring system during the excavation. The relevant regulation, incorporated by reference into the contract, provided that "[e]ach employee in an excavation shall be protected from cave-ins by an adequate protective system designed in accordance with paragraph (b) or (c) of this section...." 29 C.F.R. § 1926.652. Paragraphs b and c explicitly directed the "employer" to design the required safety support systems.

Plaintiff has not alleged and there is not the slightest hint of evidence within the record that the Government engaged in direct supervisory control of safety measures concerning this project. To the extent plaintiff's complaint is premised upon the government's allegedly negligent method of inspection, or its failure to enforce the implementation of a shoring system or adhere to acceptable building safety standards, the government exercised its discretionary power to delegate those responsibilities to an independent contractor, Phillyship. This is the kind of discretionary action for which the government has not waived sovereign immunity, 28 U.S.C. § 2680(a). Accordingly, this Court has no subject matter jurisdiction to consider claims rooted in this discretionary delegation.

### B. *Duty of the Landowner*

Even if the discretionary function exemption were deemed inapplicable to plaintiff's claims, to succeed he would still be required to demonstrate that if the defendants were private parties their actions would subject them to negligence liability in New Jersey. *See Merklin,* 788 F.2d at 173 (citing *Laird v. Nelms,* 406 U.S. 797, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972)). Plaintiff contends that he has met this burden because New Jersey has recognized a cause of action based on the failure to provide a safe work place.

■ In New Jersey a landowner "has a non-delegable duty to exercise reasonable care for the safety of ... persons using the premises at his invitation." *De Los Santos v. Saddlehill, Inc.,* 211 N.J.Super. 253, 261, 511 A.2d 721, 725 (App.Div.1986); *see also Port Authority of N.Y. and N.J. v. Honeywell Protection Serv.,* 222 N.J.Super. 11, 22, 535 A.2d 974, 979 (App.Div.1987) (declaring that the landowner's duty includes obligation to provide reasonably safe work place for an independent contractor's employees).

However, when an independent contractor is hired to "carry on an activity which by its very nature involves a peculiar or high risk of harm to the contractor's employee, the landowner is generally not responsible for injuries sustained by the contractor's employee in the course of his assigned duties." *Wolczak v. National Elec. Products Corp.,* 66 N.J.Super. 64, 75, 168 A.2d 412, 417 (App. Div.1961).

> The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of dan-

ger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform. *Donch v. Delta Inspection Servs., Inc.,* 165 N.J.Super. 567, 574, 398 A.2d 925, 928–29 (Law Div.1979) (quoting *Wolczak* ).

■ There is little doubt that cave-ins were an inherent risk of working on an excavation site. The contract specifications and the applicable regulations required Phillyship to install a shoring system during the course of the excavation. Indeed, the agreement and applicable safety regulations recognized that shoring was needed to prevent cave-ins.

Plaintiff principally relies upon *Meder v. Resorts Int'l Hotel, Inc.,* 240 N.J.Super. 470, 477, 573 A.2d 922, 926 (App.Div.1989), a case in which the defendant landowner, concededly acting as its own general contractor for the construction of a high-rise hotel, entered a contract with Claremont Interior Contractors "to stock the building with metal, metal studs and sheet rock." *Id.* at 472, 573 A.2d at 923. This contract required Claremont to comply with OSHA safety regulations as did the Phillyship contract.

*Meder* reversed a trial court dismissal and found that the defendant might be liable for injuries sustained by a Claremont employee resulting from a possible violation of OSHA safety regulations. However, this liability was premised not on defendant's status as owner of the hotel project, but rather on its status as a general contractor which "performed the role and assumed the responsibilities of prime contractor." *Id.* at 477, 573 A.2d at 926.

Relying on the decision in *Bortz v. Rammel,* 151 N.J.Super. 312, 376 A.2d 1261 (App. Div.1977), *cert. denied,* 75 N.J. 539, 384 A.2d 518 (1977), *Meder* found that there was a legislative and regulatory basis for imposing upon the general contractor the obligation to assure compliance with safety regulations. 240 N.J.Super. at 475, 573 A.2d at 925.[4]

We need not determine in this case whether the discretionary function exception would still protect the Government in New Jersey if it chose to act as a general contractor, but still elected to delegate compliance with safety regulations to the various subcontractors. In this matter the Government never undertook to perform the obligations of a general contractor, and plaintiff was clearly injured as the result of "known hazards which are part of or incidental to the very work the contractor was hired to perform." *Wolczak,* 66 N.J.Super. at 75, 168 A.2d at 417.

Because we find that (i) the claims against the defendant are barred by the discretionary acts exception to the FTCA and (ii) there is not, in any case, a viable New Jersey cause of action, we shall dismiss plaintiff's complaint in its entirety and dismiss the third party complaint as moot.

For the reasons stated above,

**IT IS** on this 6th day of April, 1994,

**ORDERED THAT:**

1. Defendants', the United States Department of the Navy and the United States Government, motion for summary judgment on all claims in the complaint is hereby **GRANTED** and the third party complaint is **DISMISSED** as moot; and

2. Plaintiff's appeal of Magistrate Judge Kugler's order is hereby **DISMISSED** as moot.

---

4. In *Wolczak* the court had exonerated both the general contractor and the owner from liability for injuries to an employee of a subcontractor. *Meder* and *Bortz* both appear to hold that "subsequent legislative action" effectively overrules the portion of *Wolczak* dealing with the liability of the general contractor. 240 N.J.Super. at 474–75, 573 A.2d at 924–25; 151 N.J.Super. at 319, 376 A.2d 1261.