■ NORREL SUTHERLAND, Appellant-Respondent, v CITY OF NEW YORK et al., Respondents-Appellants, et al., Defendants and INGERSOLL-RAND COMPANY, Defendant and Third-Party Plaintiff-Respondent. PILE FOUNDATION CONSTRUCTION Co., INC., Third-Party Defendant-Respondent. (Action No. 1.) NORREL SUTHERLAND, Appellant, v PILE FOUNDATION CONSTRUCTION Co., INC., Respondent. (Action No. 2.) [699 NYS2d 426] —In related actions to recover damages for personal injuries, the plaintiff appeals, as limited by his brief, from so much of (1) an order of the Supreme Court, Kings County (R. Goldberg, J.), dated February 4, 1998, as (a) granted the cross motion of the defendant Pile Foundation Construction Co., Inc., to dismiss the complaint in Action No. 2, (b) granted those branches of

the cross motion of the defendants City of New York, Department of Sanitation of the City of New York, and Department of Business Services of the City of New York which were to dismiss the causes of action pursuant to Labor Law §§ 240 and 241 (6) asserted against them in Action No. 1, and (c) denied that branch of his cross motion which was to consolidate both actions, and (2) an order of the same court, dated September 14, 1998, as, upon reargument, adhered to stated portions of the prior order, and the defendants City of New York, Department of Sanitation of the City of New York, and Department of Business Services of the City of New York cross-appeal from (1) so much of the order, dated February 4, 1998, as (a) denied that branch of their cross motion which was to dismiss the cause of action pursuant to Labor Law § 200 asserted against them in Action No. 1, (b) granted the cross motion of the defendant Pile Foundation Construction Co., Inc., to dismiss the plaintiff's complaint in Action No. 2, and (c) granted that branch of the motion of the defendant Pile Foundation Construction Co., Inc., which was to dismiss the first cause of action in the third-party complaint for contribution and indemnification asserted against it by the defendant Ingersoll-Rand Company, and (2) so much of the order, dated September 14, 1998, as, upon reargument, adhered to that portion of the prior order which denied that branch of their cross motion which was to dismiss the cause of action pursuant to Labor Law § 200 asserted against them in Action No. 1.

Ordered that the plaintiff's appeal from the order dated February 4, 1998, is dismissed, as that order was superseded by the order dated September 14, 1998, made upon reargument; and it is further,

Ordered that the cross appeal by the defendants City of New York, Department of Sanitation of the City of New York, and Department of Business Services of the City of New York from so much of the order dated February 4, 1998, as denied that branch of their cross motion which was to dismiss the cause of action pursuant to Labor Law § 200 asserted against them in Action No. 1 is dismissed, as that portion of the order was superseded by the order dated September 14, 1998, made upon reargument; and it is further,

Ordered that the cross appeal by the defendants City of New York, Department of Sanitation of the City of New York, and Department of Business Services of the City of New York from so much of the order dated February 4, 1998, as granted the cross motion of the defendant Pile Foundation Construction Co., Inc., to dismiss the plaintiff's complaint in Action No. 2

and granted that branch of the motion of the defendant Pile Foundation Construction Co., Inc., which was to dismiss the first cause of action in the third-party complaint for contribution and indemnification asserted against it by the defendant Ingersoll-Rand Company is dismissed, as these defendants are not aggrieved by those portions of the order (*see,* CPLR 5511); and it is further,

Ordered that the order dated September 14, 1998, is modified, on the law, by deleting the provision thereof adhering to so much of the order dated February 4, 1998, as denied that branch of the cross motion of the defendants City of New York, Department of Sanitation of the City of New York, and Department of Business Services of the City of New York, which was for summary judgment dismissing the cause of action pursuant to Labor Law § 200 asserted against them in Action No. 1, and substituting therefor a provision granting that branch of the cross motion and dismissing the cause of action pursuant to Labor Law § 200 insofar as asserted against those defendants; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the order dated February 4, 1998, is modified accordingly.

In or about May 1993, Pile Foundation Construction Co., Inc. (hereinafter Pile) entered into a contract with the City of New York for the rehabilitation of the 52nd Street Pier in Brooklyn. The work involved, among other things, driving wooden piles into the river bed. A crane located on, but not affixed to, a motorless barge was utilized for the pile-driving operation.

John Ciabattari, employed by Pile as the superintendent for the job, began work on the project in December 1993. The barge, which was owned by Pile, was not yet at the job site. It was brought to the pier in mid-December by tugboat. The crane was on the barge when it arrived. A device called a spotter was connected to the crane. The spotter was attached to a cable which was wound in a spool and operated by a winch motor mounted on the spotter. Ciabattari, who was responsible for safety at the job site, tested the equipment by running the cable in and out and checking the brake on the motor. Pile owned approximately 30 spotter/winch motors and Ciabattari's supervisor would generally decide which equipment to use on a particular job.

The pile-driving operation involved the crane operator, the spotter operator, and Ciabattari, who gave instructions from the pier. A wooden pile would be attached to the crane and the spotter operator would extend the cable until Ciabattari

signaled that the pile was in the desired position. The spotter operator would then put the winch motor in neutral, engage the brake, walk to the end of the spotter and physically position the pile under the hammer, which was used to drive the pile. After the pile was down, the spotter operator would release the brake and bring the spotter back in.

The plaintiff Norrel Sutherland, a dock builder and welder, was hired by Pile in May 1994. During his first few weeks on the job, he performed welding work on the pier. On June 6 or 7, 1994, Ciabattari asked Sutherland if he had ever operated a winch motor. Although he had not, Sutherland indicated he would try. Ciabattari briefly instructed him on the use of the equipment and the hand signals the superintendent would utilize. Sutherland operated the spotter without incident until the morning of June 8, 1994.

That morning, as Sutherland was extending the spotter, the motor stopped. According to Sutherland, Ciabattari, and another Pile employee named Alex left the pier and came to assist him. Alex tapped both sides of the spotter with a hammer and used the hammer claw to pry the cable. The spotter restarted and worked properly. Sutherland was allegedly told that if the spotter stopped again, he should follow the same procedure. While he was positioning the next pile, the spotter stopped. When he bent over the motor to fix the problem as instructed, his glove caught in the cable, pulling his arm into the spool. He sustained serious injuries as a result of the accident for which he received workers' compensation benefits.

Sutherland subsequently commenced an action against the City of New York, the Department of Sanitation of the City of New York, the Department of Business Services of the City of New York (hereinafter collectively the City), Ingersoll-Rand Company (hereinafter Ingersoll), allegedly the manufacturer of the winch motor, and others. The complaint asserted causes of action for negligence, violations of the Labor Law, products liability, and breach of warranty. Ingersoll, in turn, commenced a third-party action against Pile. After Pile served a motion for summary judgment dismissing the third-party complaint, Sutherland commenced a separate action against Pile to recover damages for violation of the Jones Act (46 USC, Appendix § 688) and the Longshore and Harbor Workers' Compensation Act (hereinafter LHWCA) (33 USC § 901 *et seq.*) and cross-moved, *inter alia*, to consolidate the two actions. Ingersoll then served an amended third-party complaint adding a second cause of action. The City cross-moved for summary judgment dismissing the complaint in the first action insofar as asserted

against it. Finally, Pile cross-moved to dismiss Sutherland's direct action against it.

The Supreme Court granted Pile's motion and cross motion, concluding, insofar as is relevant to this appeal, that Pile, as Sutherland's compensation-paying employer, was immune from suit under the LHWCA and that Sutherland was also barred from maintaining an action against his employer under the Jones Act because, among other things, he was not a "seaman" within the meaning of the statute. The court granted the City's cross motion to the extent of dismissing Sutherland's Labor Law §§ 240 and 241 (6) claims, but did not dismiss his Labor Law § 200 claim.

Sutherland then moved for leave to reargue and the City cross-moved, in effect, for reargument of that branch of its prior cross motion which sought summary judgment dismissing Sutherland's Labor Law § 200 claim asserted against it. The court granted the motion and cross motion, but adhered to its prior determination. Sutherland and the City appeal from various portions of the orders.

Pursuant to the LHWCA, a maritime worker injured in the course of employment is entitled to workers' compensation benefits from his or her employer (*see,* 33 USC § 904). A claim for compensation benefits is the worker's exclusive remedy against the employer (*see,* 33 USC § 905 [a]). However, an injured maritime worker may maintain a negligence action against a vessel owner, except in certain circumstances not relevant here (*see,* 33 USC § 905 [b]). Thus, where the employer and the vessel owner are independent entities, the worker may obtain the statutory benefits from his or her employer and also recover damages resulting from the owner's negligence, subject to a workers' compensation lien. In *Jones & Laughlin Steel Corp. v Pfeifer* (462 US 523), the United States Supreme Court held that 33 USC § 905 (b) authorizes a negligence action against a vessel owner even where, as here, the owner is also the worker's employer. In a footnote, the Court stated that the statute makes it clear that under such circumstances, the vessel owner is liable only for negligence in its owner capacity, not for negligence in its employer capacity (*Jones & Laughlin Steel Corp. v Pfeifer, supra,* at 531, n 6).

In dismissing Sutherland's cause of action asserted pursuant to the LHWCA, the court concluded that the alleged acts of negligence related to Pile's employer functions, not its owner functions, and therefore Pile was immune from liability. We agree.

Since the United States Supreme Court's decision in *Jones*

(*supra*), the Court of Appeals in the First and the Fifth Circuits have addressed the issue of the dual capacity employer's liability and applied the bifurcated approach articulated in the *Jones* footnote. In *Castorina v Lykes Bros. S. S. Co.* (758 F2d 1025, *cert denied* 474 US 846), the Fifth Circuit traced the legislative history of the 1972 amendments to the LHWCA and concluded that the bifurcated approach was consistent with Congressional intent. In this regard, a House of Representatives Committee Report states, in relevant part: "The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor * * * The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoreman, ship builders or repairman as apply when an independent contractor employs such persons" (HR Rep No. 92-1441, 92d Cong, 2d Sess 118, reprinted in 1972 US Code Cong & Admin News 4698, 4705). Thus, the Fifth Circuit held that the scheme of compensation provided in the LHWCA required it to separate the negligence of the vessel owner from that of the employer, in that case a stevedore, even when the owner performed its own stevedoring activities. The owner's duty was "neither heightened nor diminished" when the maritime worker was employed directly by the vessel (*Castorina v Lykes Bros. S. S. Co., supra*, at 1033; *see also, Levene v Pintail Enters.*, 943 F2d 528 [5th Cir], *cert denied* 504 US 940).

In *Morehead v Atkinson-Kiewit, J/V* (97 F3d 603, *cert denied* 520 US 1117), the First Circuit agreed with the Fifth Circuit's reasoning. It too found that the statutory language and legislative history of the amendments to the LHWCA clearly evidenced Congressional intent that workers' compensation be the primary remedy for an injured maritime worker, irrespective of the employer's commercial practices with regard to vessel ownership. The First Circuit noted that the 1972 amendments "carefully balanced the concerns of employers, vessels, and covered workers" and the Court was "not disposed to upset that balance by expanding the liability of employers that act simultaneously as vessel owners, when the statute [did] not call for such a reading and the Supreme Court [had] cautioned against it" (*Morehead v Atkinson-Kiewit, J/V, supra*, at 613). Consequently, the Court applied the bifurcated approach.

The First Circuit rejected the reasoning of the Second Circuit in *Fanetti v Hellenic Lines* (678 F2d 424, *cert denied* 463 US 1206), a case which predated the United States Supreme

Court's decision in *Jones.* The *Fanetti* Court concluded that a vessel owner who chooses to act as its own stevedore is not entitled to the insulation from liability which the retention of an independent contractor might afford. Essentially, the Court expanded the vessel owner's liability where it also acts as the employer. As noted by the First Circuit in *Morehead,* the *Fanetti* Court's imposition of a broadened duty of care for the dual capacity employer is contrary to Congressional intent which indicates that the vessel owner's duty is to remain the same even when it does not retain an independent contractor. The *Morehead* Court hypothesized that the Second Circuit would no longer endorse *Fanetti* in light of the United States Supreme Court's decision in *Jones.* The First Circuit did not believe it could overlook the Supreme Court's statement that a dual capacity employer is only liable for negligence in its owner capacity, even if that comment was termed dictum (*see, Morehead v Atkinson-Kiewit, J/V, supra,* at 611-612).

We agree that the United States Supreme Court's statement in Jones cannot be ignored and that the First and Fifth Circuits' analysis is consistent with Congressional intent and the limitations on employer liability set forth in the LHWCA. In this case, the court properly applied the bifurcated approach and concluded that Pile's alleged acts of negligence in permitting the use of a defective spotter and failing to adequately warn and train involved its duties as employer and not as owner of the barge (*see, Scindia Steam Nav. Co. v De Los Santos,* 451 US 156). The evidence indicates that the spotter, one of many spotters owned by Pile which were not permanently affixed to a vessel, was properly functioning when it was transported to the job site. Sutherland was injured some six months later, after the Pile construction employees had effectively assumed control of the barge. Sutherland received his instructions and training from the construction employees. Ciabattari was clearly acting as an agent of the employer, not the owner. Thus, as found by the court, the allegedly negligent condition and conduct were not attributable to the errors of maritime agents acting for the vessel, but rather were attributable to the acts of fellow harbor workers (*see, Morehead v Atkinson-Kiewit, J/V, supra,* at 614).

The court also properly dismissed Sutherland's Jones Act cause of action against Pile because he was not a seaman within the meaning of the statute (*see, Pittinger v Long Is. R. R.,* 233 AD2d 428).

Sutherland's Labor Law § 240 (1) cause of action against the City is preempted by Federal maritime law, which governs his

action (*see, Rigopoulos v State of New York,* 236 AD2d 459; *Eriksen v Long Is. Light. Co.,* 236 AD2d 439). In any event, Sutherland did not sustain a gravity-related injury and therefore has no cause of action pursuant to Labor Law § 240 (1) (*see, Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494, 500-501).

To sustain his cause of action pursuant to Labor Law § 241 (6), Sutherland was required to identify a specific applicable safety regulation which was violated by the City (*see, Ross v Curtis-Palmer Hydro-Elec. Co., supra,* at 505). Having failed to do so, the Supreme Court properly dismissed his Labor Law § 241 (6) claim.

The court erred, however, in failing to dismiss Sutherland's Labor Law § 200 cause of action asserted against the City. The City, the owner of the work site, did not exercise supervisory control over the manner in which the work was performed (*see, Caldas v 71st Ave. Assocs.,* 227 AD2d 428; *Enderlin v Herbert Indus. Insulation,* 224 AD2d 1020). Further, there is no evidence that the City had actual or constructive notice of the allegedly defective spotter (*see, Caldas v 71st Ave. Assocs., supra; Mantovi v Nico Constr. Co.,* 217 AD2d 650).

Sutherland's remaining contentions are either without merit or academic in light of our determination affirming the dismissal of his action against Pile. Ritter, Thompson and Altman, JJ., concur.

Miller, J. P., dissents and votes to modify the orders appealed from by deleting therefrom the provision granting that branch of the motion of Pile Foundation Construction Co., Inc., which was to dismiss the claim pursuant to the Longshore and Harbor Workers' Compensation Act, with the following memorandum: I disagree with the conclusion of my colleagues solely insofar as they find that the plaintiff failed to establish the existence of triable issues of fact with regard to his cause of action against the defendant Pile Foundation Construction Co., Inc. (hereinafter Pile) pursuant to the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.,* hereinafter the LHWCA). Because I believe that a factual issue is indeed presented as to whether Pile, as owner of the vessel, breached a continuing "turnover duty" (*see, Scindia Steam Nav. Co. v De Los Santos,* 451 US 156), I would sustain the plaintiff's second cause of action.

The majority's opinion accurately sets forth the operative facts, and correctly analyzes the law concerning the potential liability of "dual capacity" defendants who furnish vessels and undertake stevedoring services (*see, Morehead v Atkinson-*

*Kiewit, J/V,* 97 F3d 603, *cert denied* 520 US 1117; *see also, Castorina v Lykes Bros. S. S. Co.,* 758 F2d 1025, *cert denied* 474 US 846). Stated simply, the contrary approach taken by the United States Court of Appeals, Second Circuit, in *Fanetti v Hellenic Lines* (678 F2d 424, *cert denied* 463 US 1206) is arguably no longer viable in light of the United States Supreme Court's subsequent decision in *Jones & Laughlin Steel Corp. v Pfeifer* (462 US 523; but *see, Gravatt v City of New York,* — F Supp 2d —, 1999 WL 111922 [SD NY, Mar. 3, 1999, Sweet, J.]). Nevertheless, even under the *Morehead* approach, issues of fact exist which preclude summary judgment in favor of Pile.

In *Scindia Steam Nav. Co. v De Los Santos* (451 US 156, *supra*), the Court explained that vessel owners owe employees two duties *before* a ship is turned over to the stevedore. First, owners have a duty to exercise ordinary care to have the ship and its equipment in such condition that the stevedore will be able to carry on its cargo operations with reasonable safety. Second, the vessel owner must warn the stevedore of hidden dangers which are known to it or should have been known to it in the exercise of reasonable care. A vessel owner must satisfy these duties of care before it turns the ship over to the stevedore or else the owner will be held liable for any injuries occurring as a result of a breach of these duties. Once the owner has fulfilled this "turnover" duty, he has a right to rely on the stevedore to use reasonable care to protect his employees from dangerous conditions that may arise in the course of cargo operations. Therefore, as a general rule the vessel owner has no continuing duty to inspect or supervise cargo operations after the owner turns the ship over to the stevedore.

The *Scindia* Court, however, noted several exceptions to this rule where the vessel owner does owe a continuing duty of care to the longshoremen once cargo operations have begun. Among these, the vessel owner loses his right to rely on the stevedore and thus has a duty to intervene in cargo operations if (1) during cargo operations he discovers a dangerous condition on the vessel, (2) he knows or should have known that a dangerous condition poses an unreasonable risk to the longshoreman, and (3) the vessel owner knows that the stevedore's failure to cease loading operations is "obviously improvident".

In this case, the record demonstrates that Pile's superintendent, John Ciabattari, was aware that the winch spotter mechanism had been malfunctioning, and he was present when a fellow worker instructed the plaintiff on how to clear the mechanism when it balked, by striking the motor with a hammer

and then manually manipulating the cable until it became free. Ciabattari had a 14-year-long affiliation with Pile. As he testified during his examination before trial, it was his responsibility to coordinate safety matters with the City of New York which owned the dock under repair. Indeed, Ciabattari was Pile's senior person on the job and it was his responsibility to deal with insurance representatives. He spoke, rather casually, as if he was a representative of the owner insofar as he testified that *"we* were bidding on the job" (emphasis added), and *"we* had two other barges" (emphasis added). Furthermore, Ciabattari was responsible for repositioning the barge to the sites where piles were to be driven and, in general, his testimony suggests that he was acting as an agent of the owner, at least as much as he was acting on behalf of Pile as stevedore. Given the unresolved issues vis-à-vis Ciabattari's relationship with Pile, it certainly could be concluded that Ciabattari's awareness of the spotter's penchant for becoming jammed, and the obvious danger posed thereby to a worker required to clear the jam, constitutes the very kind of knowledge that *Scindia* indicates will cause Pile to lose its otherwise available insulation from liability.

In this regard, the decision in *Hollingsworth v Anderson-Tully Co.* (940 F Supp 967), is instructive. In *Hollingsworth,* a similar dual capacity case, the plaintiff worked for the defendant Anderson-Tully in its logging business. Hollingsworth was working on a motorless barge which was moved by tugboats to the various logging operations on the river. Once in position, a crane was used to pick up the logs and place them on the barge. One day the cables on the crane became tangled, preventing the boom from fully extending. The defendant's superintendent allowed the plaintiff to attempt to disentangle the cables. When he climbed out onto the boom, however, the plaintiff sustained grave head injuries when he was struck by a cable "buckle" as the boom fell.

The question for the Court was whether the superintendent's negligence in allowing the plaintiff to repair the cable occurred in his capacity as longshoreman or as agent of the vessel owner. The defendant argued that the superintendent was acting solely as a longshoreman because it was his job to direct and supervise the operation of getting the logs out of the harbor and loaded on the barges. In opposition, the plaintiff argued that the superintendent held a position as senior supervisor and therefore was acting as an agent of the vessel owner when he told the plaintiff to repair the crane. The Court denied the defendant's summary judgment motion holding that it needed

more factual development and a trial was necessary to "determine which hat [the superintendent] was wearing—longshoreman or agent of the vessel owner—when he made the decision to allow [the plaintiff] to attempt the repair to the [cable]" (*Hollingsworth v Anderson-Tully Co., supra*, at 971).

In the instant case, Pile's superintendent was engaged in similar supervisory capacities when he permitted the plaintiff to repair the defective winch when it malfunctioned. Both superintendents permitted their respective workers to fix problems arising from crossed or tangled cables, so as to restore stevedoring operations. If anything, Ciabattari arguably had *more* responsibility than Anderson-Tully's superintendent, Henry. Ciabattari was superintendent for the entire project whereas Henry was only a logging superintendent. Nevertheless, the Court perceived issues of fact as to whether Henry was an agent of the owner or stevedore. A similar conclusion is appropriate in this case.

The instant matter is also analogous to *Griffith v Wheeling Pittsburgh Steel Corp.* (521 F2d 31, *cert denied* 423 US 1054). In that case, the plaintiff was injured when a crane was used to close hatch covers that were rusted and otherwise inoperable. Insofar as the plaintiff's LHWCA claim was concerned, the court acknowledged that the negligence of the employees attempting to force the hatch covers closed was attributable to the stevedore. However, a foreman of the vessel owner observed the rusted condition of the hatches and failed to provide any warnings as to this dangerous condition. Due to the unanswered questions as to the foreman's status, and whether his failure to provide a warning constituted a breach of the vessel owner's continuing turnover duties under *Scindia*, the vessel owner's motion for summary judgment was denied.

So too, in the instant case, Ciabattari was aware that the spotter winch mechanism had failed one or two days prior to the plaintiff's accident. He also apparently had access to the "thirty or so" other spotter winch motors owned by Pile, some of which might have been usable on the 52nd Street pier project. Certainly a strong argument could be made that Ciabattari, as an employee of the owner, was aware of a dangerous condition and took no action to remedy it, beyond having the plaintiff instructed on the Rube Goldberg-like method of banging the motor with a hammer and then manipulating the cable to free the snag. This would appear to be a clear violation of the first *Scindia* turnover duty (*supra*) which would result in liability as against Pile as owner. As such, Pile would clearly not be entitled to summary judgment.

As the proponent of a motion for summary judgment, the defendant Pile bore the burden of establishing its entitlement to judgment as a matter of law (*see, Marano v Mercy Hosp.,* 241 AD2d 48). In the context of this case, Pile must demonstrate, as a matter of law, that any negligence attributable to it, which proximately caused the plaintiff's injuries, was attributable to Pile solely in its capacity as stevedore. This it failed to do, and thus its motion must be denied even without regard to the adequacy of the plaintiff's opposition (*see, Alvarez v Prospect Hosp.,* 68 NY2d 320; *Felter v Mercy Community Hosp.,* 244 AD2d 385). Inasmuch as it cannot be said that there is no doubt as to the existence of a triable issue of fact, Pile's motion for summary judgment dismissing the second cause of action should have been denied (*see, Museums at Stony Brook v Village of Patchogue Fire Dept.,* 146 AD2d 572).